counsel for the appellant yes your honor I may please the court I'm attorney Robert Barnes I represent mr. Struckman in this matter the sole issue on appeal is whether or not the court the district court below properly interpreted a particular fact count counsel on the outrageous government conduct claim we have another we have a Supreme Court decision in another such claim where the way the US government got its man was by kidnapping him by force Alvarez machin that turned out to be okay because the extradition treaty did not explicitly prohibit kidnapping by force and then we have another Panama case didn't go to the Supreme Court went to a circuit court where the way we kidnap somebody by force was by sending in an army and starting a war Noriega and that was okay not outrageous government conduct here all we've got is maybe a little trickiness pressure and deception leading to a legal deportation approved by the Panama Supreme Court I don't understand how that can be outrageous government conduct when the other two aren't two different issues your honor first is that in this particular case there were two just separate issues regarding government misconduct only one of which related to the conduct in the other relating to what the district court referred to as the house of cards and the illusion that was built Brady stuff as far as I could tell yes your honor involved Brady and involved limiting Mr. Struckman's cape capacity to present certain evidence that he got a he got a suppression order and he got a continuance to go over the materials when they were finally produced so I don't see where you the category of outrageous government conduct is so small it's so rare that anything ever falls into it I don't see how you even get the first base on that one well your honor I would note the United States v. Stevens this case is not much more distinguishable than what happened in Stevens up in the district court where the district court issued a dismissal for a Brady violation clearly the same issues of suppression yes your honor I believe that it is counsel in that case that you're talking about the Ted Stevens case yes your honor the government move for the dismissal ultimately the government did but it's not that the judge dismissed for outrageous government conduct he didn't the government move for dismissal and that the government has the power to null process a case with slight if any exceptions and the government granted the government's motion was granted that is correct your honor it has nothing to do with outrageous government conduct it could have if it had gone that far but it didn't that is correct but the so the would have happened in Stevens otherwise as what could have happened here here the district court was under the impression that he could not do anything about the government misconduct in Panama in particular and could not resort to dismissal based on his interpretation of a Panama courts habeas corpus order the Panama Court said that it had no jurisdiction to rule on anything that could have happened because mr. Strzokman was removed from their jurisdiction without their authority or without their consent prior to their validity as a deportation they denominated a deportation and there's two different aspects of that your honor first is here there are certain procedures to be followed both in Panama and under international law none of those procedures were followed the government deliberately knew about mr. Strzokman having counsel deliberately interfered with his right to counsel and prevented him from being able to assert his legal rights in there's no there's no protection against right to counsel for extraterritorial activities is there in fact I'm not even sure it there'd be a problem outside of court but go ahead yes your honor in fact that's what the Supreme Court ruled in 1957 in Reed v Covert I believe the citation is 354 US 1 the Supreme Court said the Bill of Rights follows government authority wherever the government acts within the territory or outside the territory and it consequently the Sixth Amendment attached to mr. Strzokman the moment he was indicted his Fifth Amendment right to due process attached to him throughout the procedure. How did they interfere with it? First of all there was no criminal proceeding in Panama right? That is correct. Second of all so so there was no right to counsel for a criminal proceeding in Panama. Well actually there was under the Panama Constitution in the testimony. That's a different question. Yes your honor that's correct. Second of all there was how did they interfere with his right to counsel? I mean there was muttering in the emails but how did they actually interfere with it? What they actually did was they asked the Panama security officials to transport him to various places knowing his lawyer was trying to track him down so they kept moving him throughout and then when they found out about the habeas petition being filed told him to bring him to the airport put him on a plane and got him out of the country before his lawyer could find where he was without ever notifying his lawyer and so they withheld information both from mr. Strzokman and from mr. Strzokman's lawyer to preclude the Panama courts from reviewing the matter. The reason being is because of their degrees of lies and as to the issue of Alvarez Machin that was the excretory that was a purely private action. There was no Mexican government involved. I'm really more concerned about what happened here with regard to my understanding is that in the end the trial judge found that the agents and to some degree the prosecutors and I'm not had lied and in fact never came clean. That is correct your honor. And continued to lie to the end. Absolutely continue to lie right of the stand. I mean attorney Adulio who was the prosecutor involved with this the Department of Justice I asked him whether he knew about mr. Strzokman having a lawyer in Panama he denied it said he had no knowledge of it I produced the facts that was sent to him by the regional security officer for Panama who I should one distinctive fact about this is he's acting as the courts agent the regional security officer is representing himself to the government of Panama as your agent not anybody else's agent but as an agent of the federal courts of the United States that's whose name he committed this deception and fraud in and what happened is then they lied on the stand regional security officer O'Brien lied about even knowing Spanish denied that he knew what his Spanish letters meant denied that he knew what the word is means in Spanish. I was actually talking about the issues having to do with the the the ongoing brain here and the the fellow who had the odd oddity and so on. Absolutely your honor all the agents got up on the stand and and repeatedly made false statements or misrepresentations and they submitted a declaration. Did the agents testify? Did the agents who were involved with Ted and I thought they did not testify. Agent Hardaway and agent Holm both testified your honor and the what they had built was a house of cards meant to maintain. But did they testify in the trial? Oh no your honor they did not testify in the trial. That's what I'm trying to figure out okay he excluded not only the evidence but they did not testify. That is correct your honor and the the issue was what kind of remedy is appropriate when that kind of government misconduct takes place. It was the district court's conclusion suppression would adequately suffice. The problem here is the court noted that if the government misconduct defense as a trial defense was gutted by the prosecution never turning over the source of the AI-1, the source of this information. It would have been except that you got the trial continued. Even with the trial continuance there was no way to know where that information would have led for government misconduct to be presented at trial because it was never produced. They just refused to produce it all the way through and so the remedy of suppression doesn't suffice because it's a situation where there's two different aspects of it. First problem with the remedy of suppression. There are two things you need in Brady. You need it to be disclosed and you need it to be disclosed in a sufficiently timely way so that you can make practical use of it. Eventually your Brady material was disclosed and because of the continuance you had enough time to make practical use of it. It's the first one I disagree with your honor. The court concluded is that they had never given us Brady and that they apparently never intended to and that it was an ongoing Brady violation. His basic finding was that they they continued to lie. Exactly. The Ted story wasn't true and that whatever story and they never came up with another one. That is correct your honor and that's the problem we have. In other words we were never given whatever the real source of the information was. They continued to lie throughout so we had no way to utilize the information they never gave us. They never disclosed. And to this day it hasn't been disclosed. That is correct your honor. To this very day. And so the question is what to do with a sort of ongoing Brady violation where the nature of the Brady violation is that they don't disclose what it is that Brady compelled them to disclose. So in that instance suppression is not a sufficient remedy. Now with regard to Bowden that was eventually disclosed. Yes your honor. Exactly. That portion of the suppression was sufficient as to Mr. Bowden as to Mr. Struckman's indictment not as to Laura Struckman's indictment. That would be a separate devious issue at some time. There are two kinds of Brady material. One kind is the kind that shows that the defendant is innocent. And the other kind is the kind that impeaches government witnesses. I think what you're talking about is never having been fully disclosed is impeaching material. And on that I don't see why it's not cured by keeping the possibly lying witnesses off the witness stand. There's two different aspects your honor. One is we don't know who the witness was that that information came from. So we don't know which one was lying. We don't know where that information would have been able to... who that witness would have been able to... Is there some witness who testified that you're saying there's undisclosed Brady material that would impeach him? Your honor I believe that some of this information came from witnesses including Mr. Anderson and Mr. Lamantia both of who testified and were cooperating witnesses for the government. But I was unable to prove so because the government never produced the actual Brady material. The second aspect is the exculpatory defense at trial of government misconduct that the district court recognized as a valid trial defense and noted we couldn't present that defense without the full source of the Brady information. But we were never given the Brady information. What reason is there to think that there was either exculpatory... let's start with exculpatory. What reason is there to think that there's unproduced exculpatory material? That the government would not go to this lengths to lie and hide the source of information unless there was exculpatory information in there. There was a finding by the district court that there essentially that there is something you weren't given. But there's no finding about the character of that something. That's correct your honor. It's the problem of when you successfully hide and they didn't successfully hide in the sense the judge caught them lying and proved they were lying. But what happens is when you don't produce what is hidden nobody knows what it is. Nobody knows how exculpatory it could be. Nobody knows what kind of defense it could provide. Nobody knows what kind of impeachment material is in there. Nobody knows how it could aid you either at trial or at sentencing. There's no way to know. So you want us just to suppose that there's exculpatory material out there because we know that the government was lying at various points about various things. I believe that's the remedy when the government refuses to ever produce the real source of the information. Have you ever asked for any other sanctions like sanctions directly against the agents or the contempt orders for example? Because they didn't come forward with what they were asked to come forward with. They were asked for example to sign declarations under penalty of perjury and they didn't do it several times. Did you ever request sanctions? Were there ever sanctions imposed? We inquired into the Department of Justice whether their internal disciplinary remedies would be invoked. And we were told or led to believe that we would know by the time of sentencing whether that had taken place or not. And that we could then resort to maybe a more reasonable. The representation to the district court at the time of sentencing was that nothing had happened. There had been no disciplinary action against anybody in the entire case. Counsel, you have about two and a half minutes left. You may want to reserve because you may want to respond to the government. Thank you, Judge. Thank you. We'll hear from the government. May it please the Court. Gregory Davis for the United States. Addressing first the question of whether this was an extradition or deportation. If you read the Supreme Court's opinion at, let's see, what page is this, the supplemental excerpts of record, page 35. In virtue with the second from the last full paragraph, starting on the due to the fact that he was deported in compliance with Resolution 107-886 of August 2004, issued by the National Immigration and Nationalization Directorate. That makes it very clear that the Supreme Court of Panama has concluded this is a deportation, not an extradition. Besides which, as we point out in our brief, there was never a formal request for extradition. The fact that Agent O'Brien facilitated the deportation does not change the deportation into an extradition. Also, I mean, the Act of State Doctrine counsels against this Court deciding a case where the outcome turns on the legality of an official act of the foreign state conducted in its own territory. That's Riggs National Court versus Commissioner of the D.C. Circuit. The Supreme Court of Panama has made it clear this is a deportation, not an extradition. Counsel, you've heard some rather strong accusations made against the government. I did. Let me ask you about two things. First of all, the right to counsel with respect to activities in Panama. What's the government's response? The response is there is no independent right to counsel for extradition proceedings or deportation, excuse me, deportation proceedings. It's fairly clear, certainly he had a right to counsel, but the right to counsel was for the criminal proceedings, not for a deportation proceeding. The case, I mean, he relies somewhat on the Dalek case, but Dalek was very different because in Dalek, the Tenth Circuit case, the defendant had specifically requested from the district court counsel and a payment for an investigator to look at the criminal investigation against him in the Tenth Circuit. I don't remember which state it was, unfortunately. Of course, here, there's nothing like that here. This is completely different. This was a simple deportation hearing, which he had waived because he didn't- He was actually arrested. Beg your pardon? He was arrested in Panama. Well, he was not arrested by the United States. He was arrested in compliance with the orders of the directorate for having, if you look- So your position is that there's no United States right to counsel with regard to a criminal proceeding in another country? I'm not saying that, but he was arrested to be held pending deportation. Well, he was originally arrested, as I understand it, because they went into his house, or where he was, because there was gunshots coming out, and also for having a false passport. That's why he was originally arrested, apparently quite fortuitously. Apparently. As I understand it, there were gunshots. The police entered the house where he was located, and then they discovered that he was carrying- I think it was a Venezuelan passport at the time. So he certainly would have had a right to counsel if this was an American arrest at that point. Correct. The problem was- So is your position that he doesn't because it wasn't an American arrest? I'm not going to go that far. I'm going to say the problem is he was arrested for something else. He had right to counsel for that, but he did not have right to counsel for a deportation hearing. Okay. There's no independent right to counsel in deportation hearings. That's fairly consistent in U.S. court cases. Essentially, you're saying that had nothing to do with why he ended up in this court. Correct. All right. What about the- I think Judge O'Scanlan had another question, actually. Well, I was just hoping you would respond to some of the assertions made by opposing counsel with respect to government-alleged misconduct, as it may affect the way in which the trial judge handled the GEO issue. Well, of course, it is an abuse of discretion. The district court has a discretionary- it's an abuse of discretion standard in terms of what remedy to apply. The district court considered all of that. Now, I would note that defense counsel didn't order the trial transcripts, so we don't know what exactly happened in the trial. We don't have any filings after- basically, all of his filings stop with the district court's opinion here. So we don't know what happened. I'm not aware of it. I haven't read the transcript because no one ordered it. So I don't know what happened at trial. I don't know if anything was- I don't know if any of the kinds of things he said were actually true. I'm not going to dispute it, but it's certainly his obligation- I guess either side could have ordered the transcript, right? That's correct, but since we didn't know that this was going to be an issue- What didn't you know was going to be an issue? I mean, they- it is accurate, is it not, that the district judge's finding with regard to the whole Ted issue was that the agents, and to some degree the prosecutors, or at least that the prosecutors weren't preventing them from lying and continuing to lie, that they had never come clean. In other words, his ultimate finding was what you're saying isn't true, and they never said anything else. Yeah. The district court judge basically found that Gary Moritz, who we never really- he suffered a massive head trauma. So the district court concluded that, circumstantially, it was impossible for him to have provided all the information attributed to Agent A1. So, therefore, what you're saying, what the agents and the government had come forward with wasn't so. It's not true. That's what he found, right? That's what the district court said. Now, we don't necessarily agree with the district court, but we did not challenge the district court's  I understand that. That was the finding. It wasn't true. And that- and that- so, therefore, the whole story never came out. What was true never came out. Well, and the district court then barred Agent Hardaway from testifying. The district court also precluded Agent Bowden from testifying, as far as I understand. The district court was able to balance the- to balance the considerations. I guess I'm concerned, frankly, as an officer of the court, about the fact that- and I don't know- quite aside from whether the issue- the case should have been dismissed, whether there had to be some sanctions or investigation or some long-term deterrence to this kind of behavior. Well, I certainly can't speak for the Department of Treasury. The agents were- are agents of the Department of Treasury. The Department of Justice- internally, we wouldn't investigate them. Some DOT would investigate- Treasury would investigate them. I have no idea whether or not they were. Again, this is not something that was directly raised in terms of whether or not there should have been sanctions. This is not something that's- Well, with regard to Bowden, for example, Bowden said that he told the prosecutors- and I don't know whether it was you or somebody else- that- about the audit. And they never told the court. They continued to say that it didn't happen. If I remember correctly from the record, Bowden said he may have told one of the prosecutors. He did say may. He said he did. And then the prosecutor said, I didn't remember. It's entirely possible to forget things, Your Honor. It's possible to forget things if you don't have ethical tentacles up. But if somebody is- the whole issue is whether or not he's- has some interest in saying what he's saying and whether he got a reward for it, and he tells you he did and then you forget? We don't have a time frame. We don't know when he said to- when he claims to have told the trial prosecutors. There's nothing in the record that I'm aware of that tells when these things happened. If I remember reading the record correctly, when- I think it was Agent Wasallick- Attorney Wasallick- when he was told that the IRS- I think it was Hardaway- had contacted the civil auditor, he was not happy. And I think it was shortly after that that that was disclosed to defendant. I don't remember the exact timeline. Several- at least twice the district judge told the prosecutors to come in with declarations under penalty of perjury from the agents as to who the informant was. And they didn't do it. They came in with declarations which were not under penalty of perjury. Now they- doesn't that suggest they knew there was some problem here? It may be carelessness. I don't- I don't think you can attribute that. It was the order. There was an effort to come in the first time. He said, okay, come back with it the second time. And they didn't do it. Well, doesn't it- I mean, I don't remember reading the order. But doesn't it say declaration? And I suppose it was carelessness. I don't- The second time he said under- I wanted declaration under penalty of perjury. And it didn't do it. I believe one was eventually filed under penalties of perjury. I- Well, eventually what happened was- Prosecutors committed misconduct. I'm not saying that's so. I'm saying let's hypothesize it. In the hearing, the agents didn't testify at trial, so it would only be- Various times throughout the entire proceedings in the case. Let's hypothesize that. If you hypothesize that, and you hypothesize that they should have been referred to the United States Attorney for prosecution and their respective bar associations for disbarment or other bar discipline. If you hypothesize all that, how does that bear on the outrageous government conduct claim? Are there cases where there's been analogous conduct and there's been an appellate adjudication of whether the defendant, although guilty according to the evidence or the jury verdict or the plea or whatever, nevertheless should- was entitled to a dismissal for outrageous government conduct? I'm not familiar with any cases on either side of that question. It's not a question I researched. I can do some supplemental research and provide the court- That was the focus here. I don't understand. I would have thought that the gist of your case would be to try to keep Struckman locked up rather than to try to protect all the government agents. Well, no. Our case is to- As the United States, our cause is to serve justice. Whether that means keeping Struckman locked up or not having Struckman locked up- Oh, if you thought that serving justice meant letting him out, then you would come in here and null process it like the government in the Ted Stephens case. If the Solicitor General approved of that, yes, definitely. But that's not what's been done. It's not been done for a variety of reasons. Trying to uphold the conviction and sentence, right? Well, we're trying to- We believe that justice will be served by upholding the conviction and sentence. Are you trying to or not? Do you want us to affirm or do you want us to reverse? I certainly want the court to affirm because the defendant is guilty. Look, I don't care because quite yet. I want to know which result you want. You keep going on about justice. We prefer affirmance. And I want to know which you think justice is. We'd like the court to affirm. Okay. We think that would serve justice. Now, the claim is that there's outrageous government conduct. We don't have a transcript so that we can see all the details. If we assume that the government did all the bad things that defense counsel urges, is it outrageous government conduct in titling the defendant to a reversal? No. And before we even get to that, it's his burden to establish that all these things happened. All of his statements are fine and are well and good, but he has to establish them in the records. This is my question. But he has established because the district court found that the agents were not telling the truth and that they never told the truth. They never came forward with the actual truth. And that's the part that bothers me. It's not so much that they at one point weren't telling the truth, but the ultimate finding is they never told the truth. As to A1. As to A1. And, you know, and then there are these issues about the prosecutors. Let's stay away from that for a minute. The question is, is there any case law that says that upholds a nondismissal in a circumstance that says suppression is sufficient when the truth never came out, when there is a finding that they were continuing to lie? That's what's bothering me. I don't know. It's not a question I looked at. And I didn't look at it for a variety of reasons. I mean, one, it's an abuse of discretion standard for the district court. Did the district court abuse its discretion in finding that suppressing the testimony was a sufficient sanction? But it obviously wasn't, because nobody has ever told the truth. Well. According to the district judge, as far as I can tell. The problem, I mean, as I said, we don't agree with the district court's factual findings. We didn't challenge them on appeal. You didn't. We did not. That's right. So that's what we've got. We've got a finding that they weren't telling the truth, and they never told the truth. But the court then prevented them from testifying. The court said, Agent Hardaway, you can't testify. Now, that's what's unusual about this case. Right? Usually what you have is the truth comes out, and then you say, all right, you can't testify. But here we have the truth never came out. We don't know whether or not it did, because there's nothing after this hearing. There's nothing that he's presented to the courts as to what happened at trial or after trial. He just stopped. And now he's claiming he's taking this much farther than he did in his brief. Anything further, counsel? No. Thank you. Thank you. Mr. Barnes, you have some reserved time. Thank you, Your Honor. The issue as to what the trial transcript would have shown is that nothing changed. We never got the truth. The truth never came out at all, ever. So because of that, we have no idea what the truth is. We don't know which witnesses to impeach. We don't know which witnesses to call. We don't know which government misconduct case at trial to present, because we were never afforded that opportunity. This case is, as the government suggested, novel. It's the first time where the nature of the Brady violation is that they never disclosed what the Brady information was. If this is affirmed, it will send a frightening precedent to all of law enforcement throughout the country, that the goal is just lie and hide, lie and hide. And even if you get caught lying and hiding, there will be no remedy because you never have to disclose. And the remedy – No remedy. The remedy could be Struckman stays in jail and they go to jail. That could be a remedy. Realistically, it doesn't happen. It's a really good remedy if you've got a guilty defendant and perjuring government witnesses. And if we could trust the government to bring such prosecutions, I would agree with you. They could meet them all in jail. Absolutely. Unfortunately, the government has not done so here and has not done so in any other case that I know of. Under these circumstances – The judge could do it with a contempt proceeding if he didn't think that the U.S. attorney would do his duty. Absolutely. But I believe still the strongest remedy would be if law enforcement knows that if they get caught, they don't get what their aim is. Their aim is to put Mr. Struckman in prison. If they're stripped of that right or methodology, that's the remedy they all get, because that's their goal and their objective. They know that the chances of them being prosecuted are next to nil. They know that no matter what happens. On the other hand – An independent judiciary – An independent judiciary could do so. Unfortunately, there's not a track record of it doing so. And this is a unique, novel case. And clearly the court could remand for certain kinds of proceedings. But one of those can be to look at whatever remedy is available, including contempt sanctions or the court recommending that a special prosecutor be appointed to investigate. I would think it would be quite a deterrent to lying agents if it had to be worth going to jail. I think that absolutely could be a deterrent. But a known deterrent that has worked throughout our criminal jurisprudence has been depriving them of the fruits of their illegality, which here their goal was to put Mr. Struckman in prison. The remedy for Mr. Struckman would only be a year out. He'll have served five years by the time this gets resolved. It's not like he's taking a walk. The only people that so far have taken a walk are the law enforcement agents in this case. And they don't deserve that, nor do the courts, should they affirm so. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in Crane v. U.S. Nuclear Regulatory Commission.
judges: O'scannlain, Kleinfeld, Berzon